**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
**LAUREN CALLETTI,**

                          **Plaintiff,**                      **MEMORANDUM**
                                                                 **AND ORDER**

                        **-against-**                              **14-CV-5358 (FB)**

**KUANG QIANYU,**

                            **Defendant.**
----------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

      Once again, this Court is constrained to address the derelictions of plaintiff's counsel, John J. Nonnenmacher ("Nonnenmacher"), in this personal injury action, which has now been settled. See Electronic Order Dismissing Case (Apr. 25, 2016). The undersigned magistrate judge previously sanctioned Nonnenmacher twice in this matter for his persistent violation of court orders. See Minute Entry (Nov. 23, 2015) ("11/23/15 Minute Entry"), Electronic Case Filing ("ECF") Docket Entry ("DE") #16; Minute Entry (Jan. 28, 2016) ("1/28/16 Minute Entry"), DE #22. The Court now considers whether Nonnenmacher's latest violations, which include his failure to appear at a show-cause hearing, warrant the imposition of further sanctions. For the reasons explained herein, the Court publicly reprimands Nonnenmacher and brings the matters addressed in this memorandum and order to the attention of the Honorable Dora L. Irizarry, Chief United States District Judge for the Eastern District of New York, for referral to the District's Committee on Grievances.

**BACKGROUND**

**I.      The November 23, 2015 Show-Cause Hearing**

On July 6, 2015, following an initial conference with the parties, this Court entered a scheduling order, pursuant to Rule 16 of the Federal Rules of Civil Procedure. See Minute Entry (July 6, 2015) ("7/6/15 Minute Entry"), DE #11. That scheduling order required, *inter alia*, that the parties complete initial disclosures (including the provision of HIPAA authorizations) by July 10, 2015, and that plaintiff provide medical expert disclosures by October 5, 2015. See id.[1] That order also referred the matter to court-annexed arbitration, with the expectation that a hearing would take place following the close of fact discovery on November 6, 2015. See id. A few weeks later, on July 21, 2015, an arbitration hearing was scheduled for November 19, 2015. See Notice of Hearing (July 21, 2015), DE #12.

On November 17, 2015, two days before the scheduled hearing, defendant's counsel, Steven J. Weissler ("Weissler"), filed an application with the Court to adjourn the November 19, 2015 arbitration hearing (hereinafter the "November 17th Motion"). See Motion to Adjourn Conference (Nov. 17, 2015) ("11/17/15 Mot."), DE #15.[2] In the November 17th Motion, Weissler set forth a detailed history of his various unsuccessful attempts to

---

[1] Nonnenmacher sent his firm's associate, Miles Linefsky ("Linefsky"), to appear at the initial conference in his place. See 7/6/15 Minute Entry. Linefsky never filed a notice of appearance in this matter, and Nonnenmacher remained the sole counsel of record for the duration of the case.

[2] Defense counsel had filed similar motions on November 5, 2015 and November 16, 2015, but the Court denied those applications without prejudice on procedural grounds. See Electronic Order (Nov. 5, 2015); (Second) Electronic Order (Nov. 17, 2015).

communicate with Nonnenmacher as early as August 2015 about plaintiff's counsel's failure to provide critical discovery, including the proper HIPAA authorizations. See id. at 1-2. Weissler needed the authorizations and related medical records before conducting plaintiff's deposition and independent medical examination ("IME"). See id. The November 17th Motion also provided background on Weissler's communications with Nonnenmacher's assistant, "Shelly,"[3] who reportedly informed Weissler on November 13, 2015 that Nonnenmacher wanted to adjourn the November 19th arbitration hearing because he was "on trial" and not expected to be available until after the Thanksgiving holiday. See id. at 2-3.

In response to the November 17th Motion, this Court directed plaintiff, Nonnenmacher and his assistant Shelly to appear in person and show cause why Nonnenmacher and his client "should not be sanctioned, and the complaint dismissed, for flouting this Court's scheduling orders." Electronic Order (Nov. 17, 2015) (hereinafter, the "11/17/15 Order"). The Court further required Nonnenmacher to "bring with him documentary proof as to his unavailability to attend the arbitration hearing[.]" See id.

At the show-cause hearing, Nonnenmacher appeared but his client and assistant did not. See 11/23/15 Minute Entry; Transcript of Hearing (Nov. 23, 2015) ("11/23/15 Tr."), DE #39. Nonnenmacher apparently never informed his client of the November 23rd show-cause hearing, see 11/23/15 Tr. at 12, and, as for Shelly's appearance, Nonnenmacher implied at first that she had received the 11/17/15 Order late, see id. at 11. But when the Court reminded Nonnenmacher of his earlier claim that Shelly was the one who had

---

[3] Around the time of the November 17th Motion, a member of this Court's staff reached out to Nonnenmacher's then-firm, Bader, Yakaitis & Nonnenmacher, LLP ("Bader Yakaitis"), to speak with Shelly in order to ascertain her last name, but Shelly declined to provide it.

transmitted the 11/17/15 Order to his wife a few days prior to the conference, he altered his story, explaining that while Shelly did have advance notice of the order, she had sent him a text the day of the conference, advising that she would be unable to attend because of "blood tests." See id. at 11-12. Notably, Nonnenmacher had failed to apply to the Court to excuse plaintiff and Shelly from attending the hearing.

Nor did Nonnenmacher proffer "documentary proof" that the upcoming arbitration hearing conflicted with an ongoing trial that he was supposedly engaged in. Rather, he brought a note on what purported to be Morristown Medical Center letterhead, stating that he had been hospitalized there from November 16, 2015 through November 20, 2015. See 11/23/15 Tr. at 2-3; Morristown Medical Center Note (undated), DE #40.[4] When confronted with the discrepancy between Shelly's November 13th statement to Weissler regarding Nonnenmacher's trial commitment and his hospital note, Nonnenmacher related a more elaborate story:

According to Nonnenmacher, on Sunday, November 15, 2015, he tripped on a dog bone at home and hit the back of his head on a porcelain counter top. See 11/23/15 Tr. at 3. He went to Morristown Medical Center, where doctors, apparently concerned about a concussion, conducted CT-scans, MRIs and X-rays, see id. at 3-4, and, Nonnenmacher

---

[4] In discussing the issue with the Court, Nonnenmacher referred to Morristown Medical Center by its former name, Morristown Memorial Hospital. See, e.g., 11/23/15 Tr. at 2. In addition, while producing the note, which appears to contain only a partial letterhead and does not legibly identify the note's author, Nonnenmacher stated to the Court in passing that his mother-in-law previously worked for that hospital. The two-sentence note does not reflect what condition or treatment required Nonnenmacher's alleged hospitalization.

-4-

claimed, he also "almost had a heart attack[,]" see id. at 33; but see id. at 4 (insisting he did not have a heart attack). In essence, Nonnenmacher contended that, while he had been scheduled to be on trial, he instead unexpectedly ended up in the hospital for four days.

Asked about the status of his trial as a result of his hospitalization, Nonnenmacher replied that the case had settled. See 11/23/15 Tr. at 33-34. As for how the case was able to settle while he was hospitalized, Nonnenmacher claimed that someone had been covering for his trial. See id. at 34. He explained that that case had been brought under the auspices of his firm, Bader Yakaitis, whereas the Calletti matter, in contrast, was being prosecuted by Nonnenmacher as an individual. See id. However, as the Court noted, another attorney, Linefsky – who Nonnenmacher conceded was a Bader Yakaitis associate – had appeared at the initial conference in this case, see id. at 34-35; see also *supra* p. 2 n.1.

In any event, regardless of any subsequent health issue, Nonnenmacher admitted at the hearing that, as of November 13, 2015, he knew that he was expected to go to trial in another case yet did not seek an adjournment of the arbitration hearing in this action. See id. at 10. More importantly, Nonnenmacher provided no excuse for having failed to respond to defense counsel's repeated inquires in August and September 2015 regarding discovery and the Rule 16 deadlines, nor did he proffer any justification for having failed to serve plaintiff's medical expert disclosures, which the Court had directed were due by October 5, 2015. See generally 11/23/15 Tr.; 7/6/15 Minute Entry.[5] Nonnenmacher's conduct essentially brought the

---

[5] Tellingly, Nonnenmacher was on notice of defense counsel's complaints concerning these
(continued…)

litigation to a standstill for a period of months. To be sure, at the show-cause hearing, Nonnenmacher offered a litany of flimsy and repetitive excuses that often had little or nothing to do with the conduct that mattered most — i.e., Nonnenmacher's failure to comply with this Court's orders and to prosecute his case by responding to his adversary's inquiries and requests.[6]

It was for those reasons that the Court sanctioned Nonnenmacher in the amount of $250.[7] See 11/23/15 Minute Entry at 1. The Court additionally directed plaintiff,

> on pain of further sanctions, including a preclusion order, to serve complete and fully compliant expert records and disclosures (which were due on October 5, 2015) by close of business tomorrow, and to produce plaintiff and her husband for depositions by January 8, 2016, and to produce plaintiff for an IME by January 15, 2016.

See id. On December 1, 2015, the arbitration clerk set a new hearing date for February 18, 2016. See Order (Dec. 1, 2015), DE #17.

---

[5](...continued)
alleged deficiencies as of November 5, 2015, the date that defendant initially filed his motion to compel. See *supra* p. 2 n.2. Nevertheless, Nonnenmacher made no attempt to address those issues with his adversary or the Court prior to the show-cause hearing on November 23, 2015.

[6] Often, Nonnenmacher's excuses were grandiose certitudes that he was ultimately unable to substantiate with any specifics. See, e.g., 11/23/15 Tr. at 12 (alleging, without supporting medical documentation, that he was "not medically supposed" to attend the 11/23/15 hearing, and that his wife and doctor both said, "you can't go, you can't go"); id. at 27, 32 (claiming that he sent the HIPAA authorizations to a "fictitious" Allstate Insurance Company lawyer named Karen Lawrence, but acknowledging that he failed to bring his file to court to support that allegation); id. at 6 (claiming that the medical records and the authorizations "have been sent [to defendant] at least seven times"); id. at 8 (same).

[7] The Court ordered that the sanction be paid into the Court Administration Fund, as defense counsel declined to seek reimbursement of his attorney's fees for the time spent addressing Nonnenmacher's derelictions. See 11/23/15 Tr. at 38.

**II.     The January 28, 2016 Show-Cause Hearing**

On January 18, 2016, Nonnenmacher wrote to inform the Court that plaintiff's January 8, 2016 deposition had been "delay[ed]" because "plaintiff developed an illness that prevented her from traveling to New York." Letter (Jan. 18, 2016), DE #18.  As an attachment to his letter, Nonnemacher supplied the Court with a stipulation signed by defense counsel that extended the arbitration hearing date from February 18, 2016 to February 24, 2016.  See Stipulation, DE #18 at 2.  The Court denied the parties' request to adjourn the hearing date.  See Electronic Order (Jan. 18, 2016).

Two days later, defense counsel submitted a letter to the Court setting forth a time-line of his largely unsuccessful attempts to speak with Nonnenmacher directly about his failure to comply with the 11/23/15 Order.  See Letter Motion (Jan. 20, 2016) ("Def. 1/20/16 Mot.") at 3-4, DE #19.  In particular, defense counsel noted that plaintiff's deposition had not merely been "delayed," as indicated in Nonnenmacher's January 18, 2016 application, but rather, plaintiff had failed to appear for her deposition.  See id.  Moreover, defense counsel stated that plaintiff's counsel had not served proper expert disclosures.  See id. at 3.  Finally, defense counsel requested that, absent an adjournment of the arbitration hearing, plaintiff be precluded from testifying at the hearing, on account of her failure to appear at her court-ordered deposition.  See id. at 5.

Accordingly, on January 22, 2016, the Court directed plaintiff and Nonnenmacher to show cause, in person on January 27, 2016, "why the relief requested in defendant's January 20th letter-motion should not be granted and why attorney Nonnenmacher . . . should not be more severely sanctioned for his continued flouting of judicial court orders."  Order to Show

Cause (Jan. 22, 2016), DE #20. The Court also ordered Nonnenmacher "to serve a copy of th[e] Order on plaintiff and to file proof of service by January 25, 2016." Id. The Court then added the following:

> Mr. Nonnenmacher and his client are warned that their failure to timely appear as directed will result in the imposition of severe sanctions, which may include preclusion of plaintiff's testimony and/or dismissal of her claims.

Id.

The day before the January 27, 2016 hearing, Nonnenmacher applied to the Court to (1) withdraw as counsel and (2) adjourn the show-cause hearing by one day. See Letter Requesting Adjournment of Conference (Jan. 26, 2016), DE #21. Although Nonnenmacher did not provide any reason for his request to withdraw, he noted that he was requesting an adjournment because he was then on trial before Justice Bernard J. Graham in Supreme Court in Kings County. See id. The Court denied plaintiff's counsel's "perfunctory application to withdraw from the case, which [w]as devoid of any explanation," but "reluctantly grant[ed] Mr. Nonnenmacher's belated request to adjourn" the show-cause hearing, until January 28, 2016 at 1:15 p.m. See id.[8]

On January 28, 2016, Nonnenmacher arrived ten minutes late and without his client. See Transcript of Hearing (Jan. 28, 2016) ("1/28/16 Tr.") at 2, DE #36; 1/28/16 Minute

---

[8] To ensure minimum disruption to Justice Graham's trial schedule, a member of this Court's staff reached out to his chambers to ascertain the time of that court's lunch break, so that the show-cause hearing could be adjourned to a time convenient to both Justice Graham and Nonnenmacher. A member of Justice Graham's staff stated that the lunch break would be from 1:00 p.m. to 2:00. Therefore, the show-cause hearing was adjourned to 1:15 p.m. (Justice Graham's staff member could not confirm whether Nonnenmacher was the attorney trying the case on behalf of Bader Yakaitis.)

Entry. Nonnemacher blamed his tardiness on "[t]he trains coming from 42nd Street[,]" which were "significantly delayed." 1/28/16 Tr. at 3. When the Court questioned why he was taking the train if he was on trial in Brooklyn Supreme Court, Nonnenmacher responded, "I am. I am before Judge [Graham] right across the street." Id. Shortly thereafter, Nonnenmacher informed the Court that he didn't believe that he had "flouted a single court order" and that his "recalcitrant client" was to blame. See id.

Not satisfied with Nonnenmacher's latest excuse, the Court stated that if his client's recalcitrance was in fact preventing him from complying with a court order, "then it was incumbent upon [him] to properly notify the Court." Id. at 5; see also id. at 10 ("If you were having problems with her, again, it was your obligation not to let deadlines pass but to bring that to the Court's attention, and you did not do that."). Moreover, the Court further noted that Nonnenmacher had failed to file proof that he had caused the January 22nd Order to be served on his client, as directed by the Court. Id. at 9-10.

When faced with the Court's recounting of his misconduct, Nonnenmacher shifted gears again, claiming that he was "overwhelmed" by having to try "98 percent of [his firm's] cases." Id. at 11. Ultimately, the Court found Nonnenmacher's excuses less than credible and, given the multiple violations occurring in the aftermath of the prior sanction, sanctioned him in the amount of $1,000. See id. at 13. The Court directed defendant to submit a letter with new proposed dates for plaintiff's deposition and IME. See id. at 18. The Court also ordered Nonnenmacher to provide the Court, by the end of the day, with an apartment number or email address for his client, to enable the Court to send a copy of that hearing's minute entry directly to plaintiff. See id. at 18, 20; 1/28/16 Minute Entry. Nonnenmacher failed to

do so.

The next day, on January 29, 2016, defense counsel wrote to the Court concerning the parties' proposed dates for plaintiff's deposition and IME. See Letter (Jan. 29, 2016), DE #23. Two days later, the Court issued the following order:

> Plaintiff Lauren Calletti is directed, on pain of severe sanctions, including dismissal of her claims, to appear for her deposition on February 15, 2016 at 10:00 a.m., and to appear for her [IME] on February 16, 2016 at 9:45 a.m. Plaintiff's counsel, who has twice been sanctioned for repeatedly violating court orders, still has not been deterred from ignoring court orders: He has not supplied the Court with plaintiff's apartment number and email address, which were due on January 28, 2016. If that information has not been filed by noon tomorrow[,] escalating sanctions will be imposed.

Order (Feb. 1, 2016), DE #25. A few hours later, defense counsel informed the Court that "plaintiff's counsel" had accepted defendant's offer of settlement. See Letter (Feb. 1, 2016), DE #26. Thereafter, the Court entered an order requiring that the parties file their stipulation of discontinuance by February 19, 2016. See Electronic Order (Feb. 2, 2016).

## III. The April 15, 2016 Show-Cause Hearing

The February 19th deadline came and went without the filing of a stipulation of discontinuance. Accordingly, on March 7, 2016, this Court issued an order directing plaintiff's counsel, "on pain of further and more severe sanctions, to file the fully executed stipulation of discontinuance by March 11, 2016." Order (March 7, 2016), DE #28. Not surprisingly, March 11, 2016 passed without compliance with the Court's order.[9]

---

[9] The Court had also issued an Order to Show Cause on February 4, 2016, after it discovered that Nonnenmacher had failed to pay the court-ordered $1,000 sanction by January 29, 2016. See Order re Order to Show Cause Hearing (Feb. 4, 2016), DE #27; 1/28/16 Minute Entry. Nonnenmacher finally paid the fine on February 8, 2016.

On April 12, 2016, this Court issued yet another Order to Show Cause, in which it directed Nonnenmacher "to show cause, in person, on April 15, 2016, at 9:30 a.m., why he should not be further sanctioned and referred to the appropriate disciplinary authorities." Order to Show Cause (Apr. 12, 2016), DE #29. The Court specifically warned "that his failure to comply with this Order will result in such a referral, as well as additional monetary sanctions." Id.

On April 15, 2016, Nonnenmacher failed to appear at the hearing. See Minute Entry (Apr. 15, 2016) ("4/15/16 Minute Entry"), DE #30; Transcript of Hearing (Apr. 15, 2016) ("4/15/16 Tr."), DE #37. During the conference, defense counsel explained that he had spoken with Nonnenmacher on February 18, 2016, reminding him of the upcoming deadline for filing the stipulation of discontinuance, and that Nonnenmacher had assured him that the stipulation would be hand-delivered to defense counsel the next day and then to the Court, and that he would thereafter mail a general release. See 4/15/16 Tr. at 4, 6-7. Nonnenmacher had failed to transmit the documents or to return a subsequent phone message left on March 3, 2016. See id. at 4.[10] The Court took under advisement the matter of whether to sanction Nonnenmacher and, if so, in what form. See 4/15/16 Minute Entry.

## IV. Nonnenmacher's Post-Hearing Submissions

On April 20, 2016, Nonnenmacher hand-delivered a one-page letter to the Clerk's Office, which this Court's chambers received on April 21, 2016 (hereinafter, the "April 20th Letter"). See Letter (delivered on Apr. 20, 2016) ("4/20/16 Let."), DE #38. In the April

---

[10] Defense counsel also brought to the Court's attention similar misconduct by Nonnenmacher in another case in this District, in which sanctions were imposed. See infra p. 16.

-11-

20th Letter, Nonnenmacher stated that, on March 23, 2016, he had been taken to "Morristown Memorial Hospital[,]"[11] where he "was diagnosed with a sinus infection, an upper respiratory infection and pneumonia" and, thereafter, "as a result of [his] illness[,] . . . required in patient care at three other facilities until April 16, 2016." Id. "During this time, [he] did not have access to [his] emails," and he purportedly did not discover the Court's April 12, 2016 Order to Show Cause until 4:51 p.m. on April 16, 2016. Id.[12]

Five days later, Nonnenmacher filed an unsolicited, supplemental five-page letter addressing his failure to appear before the Court on April 15, 2016, as well as other conduct for which Nonnenmacher had previously been sanctioned (hereinafter, the "April 25th Letter"). See Response (April 25, 2016), DE #32.[13]

## DISCUSSION

As an initial matter, Nonnenmacher should not now be heard to reargue the basis for the two prior sanctions. He had ample opportunity to explain his position prior to the imposition of each sanction, and this is not the time for reconsideration of the Court's findings. His excuses for his derelictions – such as the alleged lack of cooperation from his client and her physicians – are beside the point.[14]

---

[11] See discussion *supra* p. 4 n.4.

[12] The April 20th Letter was silent as to why it then took Nonnenmacher four days to file his one-page response.

[13] This letter was originally incorrectly docketed as a Motion for Sanctions, but the motion was terminated, with a notation that the submission should have been filed as a response to this Court's Order To Show Cause. See Electronic Order (Apr. 25, 2016).

[14] In any event, nothing in the April 25th Letter would persuade the Court to rule any

(continued…)

As for Nonnenmacher's failure to comply with the Court's directive that the parties file their stipulation of discontinuance by February 19, 2016, Nonnenmacher explains that "[a]t the time of the settlement, [he] was still a partner with [Bader Yakaitis]" and that an unidentified person at that firm failed to prepare the settlement paperwork. See 4/25/16 Let. at 4; but cf. 11/23/15 Tr. at 34 (claiming that Nonnenmacher was handling the case on a solo basis, not through the firm). While Nonnenmacher states that he was "100% responsible for failing to [en]sure the necessary paperwork was completed, served and filed[,]" id., he offers no excuse for his alleged promise to defense counsel that he would deliver the stipulation before the court-ordered deadline the next day, and/or the fact that he never returned Weissler's phone message to him on March 3rd about the missing stipulation.

Moreover, while Nonnenmacher claims that he was still a partner at Bader Yakaitis at the time of the settlement, which was reached on or about January 29, 2016, in the same letter, he also states that he left the firm in "mid-January of 2016[.]" See 4/25/16 Let. at 4. Nonnenmacher further states that his departure from Bader Yakaitis resulted in a change of his email from jnonnenmacher@bynlaw.com to johnnynon@aol.com, and implies that "because

---

[14](…continued)
differently than it did in November 2015 and January 2016. For example, Nonnenmacher complains about improper initial disclosures Linefsky allegedly made in July 2015, but ignores the fact that, as a partner and counsel of record, Nonnenmacher was obligated to supervise Linefsky's work. See 4/25/16 Letter at 3. Nonnenmacher also conveniently fails to acknowledge his own responsibility to raise these issues with the Court in a timely fashion. See id. (arguing that Linefsky's performance, "coupled with plaintiff's treating physicians['] failure to provide [him] with copies of their records and medical reports[,] *was the reason why [he] was eventually sanctioned $250.00[,]*" without mentioning that Nonnenmacher failed to communicate with defense counsel or the Court in advance of the November 19th arbitration hearing) (emphasis added); see generally 11/23/15 Tr.

access to [the firm] email account was cut off before February 1, 2016 . . . [he] never saw the Court's ECF regarding the [April 12th] Order to Show Cause or for my need to appear." 4/25/16 Let. at 4.  Nonnenmacher's excuse, however, is belied by the fact that the April 12th Order to Show Cause was sent to him at his new email address on April 12, 2016.  See Receipt for 4/12/16 Order.

In addition to his departure from Bader Yakaitis, Nonnenmacher points again to his hospitalization at four hospitals from March 23, 2016 through April 16, 2016, as a reason for his failure to appear at the April 15th show-cause hearing.  See 4/25/16 Let. at 4-5.  Nonnenmacher claims that, with the exception of two days, he did not have access to emails.  See id. at 5.  Therefore, Nonnenmacher requests that the Court not sanction him further in this case.

The Court concludes that Nonnenmacher has not satisfactorily explained his admitted failure to comply with this Court's order that the stipulation of discontinuance be filed by February 19, 2016, or with this Court's direction that he provide the undersigned magistrate judge with additional contact information for his client.  See generally Fed. R. Civ. P. 16(f)(C) (sanctions may be imposed if a party or its attorney "fails to obey a scheduling or other pretrial order").  As for Nonnenmacher's excuse for failing to appear at the April 15, 2016 show-cause hearing, were this the first instance of Nonnenmacher's questionable behavior, the Court might be more inclined to credit his medical excuse.[15]

---

[15] The stated reason for Nonnenmacher's hospitalization on March 23, 2016 seems to differ from case to case.  In an unrelated action in this District, Nonnenmacher's co-counsel informed the Honorable Allyne R. Ross that, according to Nonnenmacher's wife,

(continued…)

-14-

But the Court need not make a credibility finding at this time. Even assuming the truth of all facts asserted by Nonnenmacher, including his hospitalizations, he nevertheless had an obligation to properly manage this case, whether that meant timely asking the Court for extensions of time or making arrangements for another attorney to handle the matter for him during his medical absence(s). Nonnenmacher did none of those things. Rather, he simply went silent and missing in action, prompting his adversary and the Court to expend unnecessary time and effort trying to reach him.

Given the erratic manner in which Nonnenmacher has handled this case, and his rambling and never-ending excuses for his various violations, the Court concludes that the most appropriate sanction, in addition to a public reprimand, is to bring Nonnenmacher's conduct to the attention of Chief Judge Irizarry, for referral to the District's Committee on Grievances, pursuant to Local Civil Rule 1.5. See S. & E.D.N.Y. Local Civ. R. 1.5 ("The Chief Judge shall appoint a committee of the Board of Judges known as the Committee on Grievances, which under the direction of the Chief Judge shall have charge of all matters relating to the discipline of attorneys."); see also In re Goldstein, 430 F.3d 106, 111-12 (2d Cir. 2005) (noting that courts have the inherent authority to "police the conduct of attorneys as officers of the court," and affirming the court's referral of attorney conduct to the

---

[15](…continued)
Nonnenmacher was rushed to the hospital on March 23, 2016 "with an apparent heart attack or panic attack." See Letter, DE #112 in 11-CV-4507. Meanwhile, in the instant matter, Nonnenmacher told the Court that his three-week hospitalization resulted from a "sinus infection, an upper respiratory infection and pneumonia." 4/20/16 Let.; see also discussion *infra* p. 16.

disciplinary committee) (internal quote and citation omitted).

Specifically, this Court requests that the Committee consider whether Nonnenmacher's conduct in this case complied with Rule 1.16(b)(2) of the Rules of Professional Conduct of the New York State Unified Court System, which requires an attorney to withdraw from the representation of a client when "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." Moreover, the Court urges the Committee to inquire into whether Nonnenmacher's conduct in this matter has been competent and diligent, pursuant to Rules 1.1 and 1.3 of the Rules of Professional Conduct of the New York State Unified Court System. The recommendation that a disciplinary inquiry be undertaken is bolstered by Nonnenmacher's bizarre behavior in other cases in this District, which suggests a wider problem and raises serious questions as to whether Nonnenmacher is fit to practice law at this time.

For example, in <u>Martin v. Giordano</u>, Nonnenmacher was recently publicly reprimanded by Judge Allyne R. Ross and was referred to the Committee on Grievances for consideration of the imposition of discipline or other relief. <u>See</u> — F.Supp.3d —, 2016 WL 2731473, at *26 (E.D.N.Y. May 9, 2016). In <u>Martin</u>, on the eve of trial in March of this year, Nonnenmacher asked his co-counsel to seek an adjournment of the trial because, according to co-counsel, Nonnenmacher's mother had passed away. <u>See id.</u> at *7-8 Nonnenmacher's co-counsel later hired a private investigator and discovered that Nonnenmacher's mother was alive. <u>See id.</u> at *8. Although Nonnenmacher attributed the falsehood to a misunderstanding, Judge Ross deferred to the disciplinary committee to

determine whether Nonnenmacher "intentionally misrepresented his mother's death."  See id. at *25.[16]

Nonnenmacher engaged in a similar disappearing act in a case before the Honorable LaShann DeArcy Hall in Chay v. J.C. Penney Company, Inc., 15-CV-6896.  In Chay, Nonnenmacher failed to appear before Judge Hall and missed a briefing deadline.  See Letter Motion to Dismiss for Lack of Prosecution (Apr. 29, 2016) at 2-3, DE #11 in 15-CV-6896 (setting forth Nonnenmacher's performance problems in Chay).  Once Nonnenmacher resurfaced in late April 2016, the parties voluntarily dismissed the case in order to proceed to arbitration.  See Order Dismissing Case (May 13, 2016), DE #14 in 15-CV-6896.

Nor are his performance problems limited to the period leading up to and during his hospitalization in 2016.  In another case in this District, Racks v. City of New York, Nonnenmacher missed a telephone conference with Magistrate Judge Robert M. Levy on April 27, 2016, and thereafter wrote Judge Levy a letter explaining that his long hospitalization had caused him to suffer a back-log in his cases and that his absence was not an intentional disregard of Judge Levy's order.  See Minute Entry (Apr. 27, 2016) in 11-CV-2305; Letter by Lamont Racks (Apr. 28, 2016) ("Racks Pl. 4/28/16 Let."), DE #47 in 11-CV-2305.[17]  Almost a month later, however, on May 23, 2016, Nonnenmacher failed to

---

[16] Notably, statements made by Nonnenmacher in the Martin case are belied by his conduct in this case.  Compare Declaration of John Joseph Nonnenmacher (Apr. 20, 2016) ¶ 7, DE #142 in 11-CV-4507 ("My failure to keep up with emails or ECF since March 21, is not something that is characteristic of my professional career"), with 11/17/15 Mot.; Def. 1/20/16 Mot.

[17] Compare 4/25/16 Let. at 4-5 ("With the exception of possibly two days at Morristown Medical Center, I did not have access to my emails as electronic devices were prohibited."), with Racks Pl. 4/28/16 Let. ("With the exception of one day, I did not have access to my emails as electronics were prohibited."). It is unclear why all of the hospitals would prohibit

(continued…)

participate in another proceeding before Judge Levy in that case. See Minute Entry (May 23, 2016) in 11-CV-2305 ("Plaintiff's counsel did not appear or request an adjournment."). In a letter docketed on May 26, 2016, Nonnenmacher told Judge Levy that he had been unable to participate in that conference because a visit with his mother in a nursing home left him "so heartbroken and devastated . . . that [he] lost sight of all of [his] responsibilities." Letter by Tanya Racks (docketed May 26, 2016), DE #54 in 11-CV-2305. However, the visit referenced by Nonnenmacher allegedly occurred on Tuesday, May 24, 2016 – the day *after* the proceeding that he failed to attend.

Clearly, Nonnenmacher's behavior in this instant matter is part of a larger pattern and practice, and this Court believes that the Committee on Grievances is best suited to consider the appropriate discipline for Nonnenmacher.

## CONCLUSION

For the reasons stated herein, the Court, in its discretion, declines to impose yet another financial sanction on Nonnenmacher and, instead, publicly reprimands him and presents the issues outlined in this opinion to Chief Judge Irizarry for referral to the Committee on Grievances.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**June 7, 2016**

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[17](…continued)
electronic devices if Nonnenmacher was being treated for, as he claims, an upper respiratory infection. See 4/20/16 Let.